532 A.2d 399

**Melvin BAKER, Appellant,**

v.

**LAFAYETTE COLLEGE, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 1987.

Decided Oct. 15, 1987.

292

---

J. Stephen Kreglow, Easton, for appellant.

George C. Laub, Norman Seidel, Easton, for appellee.

Before NIX, C.J., and FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

**OPINION**

ZAPPALA, Justice.

We granted the Appellant's petition for allowance of appeal to review the Superior Court's order, 350 Pa.Super. 68, 504 A.2d 247, affirming the order of the Court of Common Pleas of Northampton County, which had granted Appellee's preliminary objections to parts of Count I and II of the Appellant's complaint and granted a motion for summary judgment to the remaining parts of Count I and II of that same complaint. Because we hold that the communications were not defamatory and that the Appellant's contract was not breached, we affirm.

On or about May 19, 1976, the Appellant accepted a position as an Assistant Professor in the Art Department of Lafayette College (College). The written contract term was for two years commencing with the Fall term of 1976 although the Appellant believed he had a commitment for two two-year contracts to be followed with tenure. Furthermore, his contract incorporated and included *The Faculty Handbook.*

Between May and June of 1977, internal problems arose within the Art Department and with the behavior of its chairman. As a result of alleged behavioral problems of the department chairman, the Appellant had frank and open discussions with the College's staff, including the President, the Provost, the Assistant Provost, and the College physician. The Appellant was assured that all conversations would be held in strict confidence. However, at a later date, the Appellant learned that the department chairman had been advised of the substance of these conversations. Further investigation of the chairman resulted in the College physician recommending psychiatric and psychological counseling for the department chairman.

On July 15, 1977, the department chairman wrote his first evaluation of the Appellant. In this report, the chairman critiqued each course taught by the Appellant as well as his overall job performance. On October 31, 1977, the chair-

man authored his second evaluation in which he expressed disappointment and dissatisfaction with Appellant's overall job performance, his failure to improve such performance, and his failure to live up to his projected performance. In this second evaluation, the department chairman recommended that Appellant not be reappointed. Neither of these evaluations were forwarded to the Appellant.

On December 13, 1977, the Appellant was informed that he would not be reappointed because economic factors required a decrease in the staffing of the Art Department. The Appellant then advised the provost that he would not appeal this determination and requested that no further review be conducted as had occurred after another teacher's termination. Notwithstanding, the dean of the Tyler School of Art of Temple University (Tyler) visited the College. Although the provost indicated that the purpose of the dean's visit was to evaluate the Art Department, the dean indicated in his report that the purpose of his visit was to evaluate a faculty member of the Art Department and the facts surrounding his termination.

Pursuant to Section 3.555 of *The Faculty Handbook*, the Appellant appealed his nonreappointment to the president of the College and requested the appointment of an advisory committee. This committee gave little credence to the chairman's evaluations and likewise found fault with the evaluation of the dean of Tyler. The committee did not recommend retaining the Appellant but did recommend that new evaluations be conducted. Despite the expressed views of the advisory committee about the unreliability of the evaulations, the president denied the appeal. The board of trustees affirmed that decision.

The Appellant then commenced this litigation by filing a complaint against Lafayette College, asserting that the two evaluations by the department chairman, the evaluation of the dean from Tyler, and a memorandum from the department chairman to the provost were all libelous and slanderous. In addition, the Appellant alleged that the College

breached his employment contract by not acting in good faith in reviewing his reappointment.

In response to the complaint, the Appellee filed preliminary objections in the nature of a demurrer, alleging that the communications complained of, even if libel and slander, were consented to. In addition, the Appellee alleged that the assumpsit claim was barred by the express terms of the contract which provided that the term of employment was for two years and specifically noted that no assurances were given as to any employment after the expiration of the contract.

The trial court dismissed the defamation actions based upon the two evaluations of the department chairman, finding that the alleged defamatory material complained of was consentual communications. *The Faculty Handbook* provided that nontenured professors are subject to evaluations from their peers. Accordingly, the two reports prepared by the department chairman were absolutely privileged. Under the pleaded facts, the trial court was not in a position to determine an absolute privilege with regard to the memorandum from the department chairman to the provost and the report submitted by the dean of Tyler to the provost, thus the demurrer as to these two communications was denied. With regard to the assumpsit claim, the trial court denied the demurrer finding that sufficient questions of fact existed with respect to the interpretation of the language concerning the employment term.

Thereafter, the same trial judge was confronted with the Appellee's motion for summary judgment to the assumpsit claim and to the claims based upon the alleged defamatory materials not otherwise dismissed by the preliminary objections. With regard to the memorandum by the department chairman to the provost (Exhibit C–R. 59a) the trial court held that the contents were not defamatory and therefore a cause of action did not lie. Likewise, the trial court held that the evaluation of the dean of Tyler (Exhibit D–R. 60a) consisted of nothing more than the opinions of the dean with regard to the operation of the Art Department. There-

fore, the communication was not defamatory in nature. Finally, as to the assumpsit claim, the trial court held that the contract clearly established that the term of employment was for two years. By his deposition testimony, the Appellant admitted that the contract gave no assurances for renewal of his appointment. Consequently, the court held that the College did not breach the Appellant's contract.

On appeal, the Superior Court affirmed holding inter alia that Exhibits A (R. 48a) and B (R. 54a) were consentual communications required by *The Faculty Handbook* and Exhibits C and D were not capable of defamatory meaning. Likewise, the Appellant failed to state a contract action against the Appellee because the Appellee complied with the terms of the agreement including the length of the contract and the procedures involved in the review process. For the following reasons we affirm the judgment of the Superior Court.

In order for a statement to be considered libelous or slanderous, the trial court must, in the first instance, make a determination as to whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party. *Bogash v. Elkins*, 405 Pa. 437, 176 A.2d 677 (1962). In reaching this conclusion, the court must view the statements in context, *Thomas Merton Center v. Rockwell International Corporation*, 497 Pa. 460, 442 A.2d 213 (1981) *cert. denied* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982) and determine whether the statement was maliciously written or published and tended "to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." (citations omitted). *Corabi v. Curtis Publishing Company*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971). The test to be applied in evaluating any statement is "the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Id.*, 441 Pa. at 447, 273 A.2d at 907. A critical factor in determining whether a communica-

tion is capable of defamatory meaning then is the nature of the audience hearing the remarks *See, Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980). Finally, opinion without more does not create a cause of action in libel. *Bogash v. Elkins, supra.* Instead, the "allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Beckman v. Dunn*, 276 Pa.Super. at 535, 419 A.2d at 587, citing Restatement (Second) Torts, Section 566 (1976).

■ Applying these well established legal principles to the present case, it is clear that none of the statements are defamatory. Exhibit A is the first evaluation, directed to the provost by the department chairman. In this report, the department chairman first outlines his review of the various courses taught by the Appellant, including the Appellant's adherence to the written course descriptions, and the overall success of the course. In at least two instances, the chairman concludes that the courses taught by the Appellant were no worse than previously. On the whole, this evaluation is just that, an evaluation of the work performance of the Appellant for the first academic year. Exhibit B presents an evaluation of Appellant's second semester. Like Exhibit A, it presents the chairman's opinion as to the continued value of the Appellant to the Art Department and the College. Although Exhibit B does not portray the Appellant in glowing terms, the substance of the report includes frank opinion void of innuendo. Thus, we must conclude as both lower courts have previously, that neither Exhibit A nor B are capable of defamatory meaning.

■ Exhibit C is the memorandum from the department chairman to the provost. This memorandum was written after the Appellant had been notified that his appointment would not be renewed but before the end of his final academic year. The Appellant complains that the following language is defamatory:

> I consider [Mrs. Baker's presence in Professor Baker's studio classes] to be an extraordinary, peculiar, and academically deplorable arrangement. Nevertheless, since Mel has been notified that he will not be reappointed to the faculty next year, I have decided to overlook it, just as I have overlooked so many other questionable things that have occurred in the art department during the past three years. R. 59a.

In discussing why the aforementioned statements are actionable, the Appellant states only that "the third document ... contained critical comments concerning Baker." (Appellant's brief at 14). He then argues that these words are actionable because the chairman had no right to evaluate him since it was already determined that the Appellant's appointment would not be renewed. While the Appellant's argument may raise an issue regarding the continued consent to an evaluation of his work under *The Faculty Handbook*, we need not reach that argument if these statements cannot be considered defamatory. As with Exhibits A and B, the department chairman is merely expressing his personal opinion that having Mrs. Baker in the classroom during class is "deplorable." Since the above-quoted language does not appear to be based upon any undisclosed facts, but rather specifically disclosed facts, we conclude that such language is not susceptible to any defamatory meaning.

■ Appellant contends that Exhibit D, the letter from the dean of Tyler to the provost, likewise defames him. Specifically, the Appellant contends the following statements defamed him:

> Professor Baker seems, from the reports I received, to be less successful at meeting these requirements than the other studio faculty member. His attitude, as reported by Professor Gluhman, would seem to be almost cavalier in his dealings with the students, i.e. no regular hours, no outside assignments, a general attitude that the best way to build a program is by giving high grades. Although he was brought in originally to develop the sculpture and

three-dimensional design program, he does not seem to have interest in three-dimensional design. His primary interest lies in the area of figurative modeling, but the results of his class as shown in examples provided for me, seem ordinary at best. R. 60a–61a.

As with Exhibit C, before we reach the consent argument, we must analyze the above statements to determine whether they are capable of defamatory meaning. Like the previous Exhibits, it is unclear as to why these statements are defamatory. It appears that the dean is expressing his conclusions based upon his investigation of the Art Department. Within this statement, the dean provided the very facts he relied upon to reach his conclusions. Based upon his perceived needs of the Department and the College, he concludes that the Appellant is expendible. On its face nothing in this report is defamatory.

■ Finally, the Appellee argues that the College breached his employment contract by not evaluating his performance in "good faith". Since the College was aware of the chairman's distaste for the Appellant, the Appellant argues that the College was responsible to conduct an independent review of the Appellant's performance based upon "his teaching record, professional growth and service to the College." (Appellant's brief at 27 quoting *The Faculty Handbook* § 3.433).

As in all aspects of life, no procedure is fool proof. In our judicial system we have various appeals to review lower court determinations alleged to be improper or unwise. The purpose of appellate review is to correct any prior wrongdoings. Likewise, *The Faculty Handbook* sets forth review procedures. In accordance with these procedures, the Appellant appealed to the president of the College and ultimately to the board of trustees. We would be hardpressed to conclude that the College acted in bad faith when it followed the required review procedures. This Court has no jurisdiction to review the factual determinations of a

college's governing body unless it can be clearly demonstrated that that body violated its own procedures.

Judgment affirmed.

HUTCHINSON and PAPADAKOS, JJ., concurred in the result.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.