

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2001

# Remick v. Manfredy

Precedential or Non-Precedential:

Docket 99-1422

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Remick v. Manfredy" (2001). *2001 Decisions.* Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 25, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1422

LLOYD Z. REMICK, ESQ.,
        Appellant

v.

ANGEL MANFREDY;
JOHN MANFREDY;
JEFFREY H. BROWN, ESQ.;
KATHLEEN H. KLAUS, ESQ.;
D'ANCONA & PFLAUM

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-00025)
District Judge: Hon. J. Curtis Joyner

Argued September 13, 2000

Before: SLOVITER, SCIRICA and ALITO, Cir cuit Judges

(Filed: January 25, 2001)

        Patrick C. Campbell, Jr. (Argued)
        Richard G. Phillips Associates, P.C.
        Philadelphia, PA 19103-7596

         Attorney for Appellant

Louis C. Ricciardi
Rodriguez & Richards

Philadelphia, PA 19103

Lisa M. Sommer

Steven L. Baron (Argued)
D'Ancona & Pflaum
Chicago, IL 60601

   Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Lloyd Remick, an attorney specializing in sports and entertainment law licensed to practice in the

Commonwealth of Pennsylvania, filed suit in a Pennsylvania state court against Angel Manfr edy ("Manfredy"), John Manfredy, Jef frey Brown and Kathleen Klaus, as well as against the law firm D'Ancona & Pflaum with which Brown and Klaus are associated. The complaint

alleges, inter alia, breach of contract, tortious interference with contract, misappropriation of image and likeness, civil conspiracy, and defamation.1 The defendants removed the action to the United States District Court for the Eastern District of Pennsylvania.

The District Court dismissed the complaint against the individual defendants under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and against the law firm under Rule 12(b)(6) for failure to state a claim. See Remick v. Manfredy, 52 F. Supp. 2d 452 (E.D. Pa. 1999). This appeal raises a number of issues which we will consider seriatim.

_____

1. Although Remick refers briefly to the dismissal of the remaining counts of the complaint, he provides no legal argument to support his contention that the District Court erred and we have found none.

2

I.

FACTS

According to the complaint, which we accept as true for purposes of a motion to dismiss, in late 1996 Remick and his associate, Bernard Resnick, wer e approached by Manfredy, a lightweight professional boxer , and his advisors, John Manfredy, his brother and agent, and Jeffrey Brown, an attorney with D'Ancona & Pflaum, about representing Angel Manfredy in negotiations, particularly with fight promoter Cedric Kushner Pr oductions, Ltd. ("Kushner"). Eventually, Remick and Manfr edy entered into a contract under which Remick would act as Manfr edy's special counsel in the procurement and negotiation of high profile and lucrative fights, promotions and endorsements. Manfredy signed a fee agreement that entitled Remick to a specified percentage of all purses or other compensation which Manfredy received for boxing or pr omotions during the term of the agreement and of any endorsement contract procured by Remick on Manfredy's behalf.2 Manfredy and Brown had the right to review and appr ove or disapprove all contracts negotiated by Remick. On February 7, 1997, Remick was successful in negotiating for Manfr edy an Exclusive Promotional Agreement between Kushner and Manfredy.

According to Remick, Manfredy quickly benefitted from his representation, and in the year following Remick's retention Remick had secured Manfr edy purses up to $375,000. In early 1998, there was a disagr eement between Remick and Manfredy over negotiations for an HBO–televised fight between Manfredy and Azumah Nelson, and ultimately the proposed Nelson fight fell thr ough. On March 2, 1998, Manfredy sent Remick a letter ter minating his representation, asserting that Remick had failed to

_____

2. The agreement provided Remick was to receive 5% of up to $35,000 of Manfredy's purse for the first bout ther eafter, 8% of the net amount of all purses or other compensation Manfredy r eceived for boxing or promotions thereafter during the ter m of the agreement, and 15% of the gross amount Manfredy received fr om any endorsements Remick procured for the boxer.

adequately represent Manfredy's inter ests by not delivering on certain alleged promises and faltering as a negotiator. The letter concludes with the following paragraphs:

> When we began working together you led me to believe that you had the ability and connections to bring in endorsements and negotiate effectively with [Kushner]. This hasn't happened. During the more than thirteen months you represented me you never delivered a single endorsement opportunity.

> As a result of your failures to adequately represent my interests, I have decided to terminate your engagement. Please forward all of my files r elating to my representation to my attorney, Jeffrey Brown, at D'Ancona & Pflaum.

App. at 119.

Thereafter, Manfredy's team negotiated with Kushner for a bout against Isander Lacen to take place on June 16, 1998, with a $75,000 purse. Remick claimed that he was entitled to an 8% share of Manfredy's purse because he negotiated the overarching Exclusive Pr omotional Agreement between Manfredy and Kushner . Remick asked Kushner to place 8% of Manfredy's purse into escrow until his dispute with Manfredy could be resolved, but Kushner did not do so.

On September 2, 1998, Remick wrote to Manfr edy rejecting the termination of his r epresentation, demanding 8% of Manfredy's purse from the Lacenfight, and stating that he would "be left with no recourse than to pursue legal remedies" unless Manfredy withdr ew his March 2, 1998 termination letter. App. at 59–60. On September 11, 1998, defendant Kathleen Klaus, another attorney with D'Ancona & Pflaum, sent a letter to Remick stating:

> We are writing in response to your letter of September 2, 1998 threatening to take legal action against our client Angel Manfredy.

> As you know, Mr. Manfredy ter minated his relationship with you by letter on March 2, 1998. His letter made it very clear that, in light of your failure to perform your obligations to him, he was left with no

4

alternative other than to sever his association with you. Your September 2, 1998 letter indicates that you received Mr. Manfredy's letter six months ago and, because you are an attorney, we assume you appreciated its import.

We are not aware of any legal principle which allows you to "reject" the termination of an attorney client relationship or any authority which requir es one party to the contract to perform in the face of the other party's breach. If you insist on attempting to extort money from Cedric Kushner Promotions, Ltd. or any other entity with which Mr. Manfredy is engaged on the basis of your alleged contract with Mr. Manfr edy, we will not hesitate to pursue our legal remedies, including a suit for damages arising from your failure to adequately represent Mr. Manfr edy.

App. at 121.

Remick's complaint in this case arose out of both the failed relationship with Manfredy and the Klaus letter. Defendants filed a motion to dismiss under both Rule 12(b)(2) and Rule 12(b)(6) and an Alternative Motion to Transfer under Rule 17. The District Court granted the defendants' motion to dismiss pursuant to Rule 12(b)(2), concluding that there was no personal jurisdiction over the individual defendants. Focusing on the merits of the claims against the law firm, the District Court considered defendant's Rule 12(b)(6) motion. It dismissed with prejudice Remick's defamation claim against D'Ancona & Pflaum, and dismissed (without prejudice) his claims for interference with business and contractual relationships (variously called, inter alia, inter ference with contracts) and civil conspiracy. Remick filed a timely notice of appeal.

II.

APPELLATE JURISDICTION

Although the order of the District Court dated April 22, 1999, states that the complaint is dismissed without prejudice, in fact the Memorandum and Or der dated the

5

same day and filed contemporaneously holds that the complaint against the individuals is dismissed for lack of personal jurisdiction, that there is general personal jurisdiction over the law firm, and that one count of the complaint against the law firm, that for defamation, is dismissed with prejudice but that two counts against that defendant, the claims for tortious interfer ence with contract and for civil conspiracy, are dismissed with leave given to Remick to replead. He chose not to do so, instead filing the notice of appeal.

Because of the procedural posture of the case, we asked Remick to comment at oral argument on our jurisdiction to hear this matter. In Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam), this court, noting the general rule that an order dismissing a complaint without prejudice is not appealable, stated that "[o]nly if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable."

Although generally a plaintiff who decides to stand on the complaint does so in the district court, see, e.g., In re Advanta Corp. Sec. Litig., 180 F.3d 525, 529-30 (3d Cir. 1999); In re Westinghouse Sec. Litig., 90 F.3d 696, 702 (3d Cir. 1996), we have made clear that such a course, while preferable, is not always necessary. Recently, in Semerenko v. Cendant Corp., 223 F.3d 165, 172-73 (3d Cir. 2000), the plaintiffs/appellants declared their intention to stand on their complaint in this court, and we thereafter treated the district court's order dismissing the complaint, albeit without prejudice, as a final order dismissing with prejudice and therefore appealable.

During the argument in this case, Remick's attorney stated unequivocally that Remick wished to stand on his complaint. Accordingly, we conclude that we have jurisdiction over the dismissal as a final or der under 28 U.S.C. S 1291.

6

III.

PERSONAL JURISDICTION OVER
INDIVIDUAL DEFENDANTS

Remick does not deny that individual defendants
Manfredy, John Manfredy, Brown, and Klaus are not
residents of Pennsylvania. Manfredy is an Indiana resident,
and the other defendants are residents of Illinois. Under
Fed. R. Civ. P. 4(e), a district court may assert personal
jurisdiction "over non-resident defendants to the extent
permissible under the law of the state wher e the district
court sits." Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149
F.3d 197, 200 (3d Cir. 1998) (citation omitted).
Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann.
S 5322(b), authorizes Pennsylvania courts"to exercise
personal jurisdiction over nonresident defendants to the
constitutional limits of the due process clause of the
fourteenth amendment." Mellon Bank (East) PSFS, Nat'l
Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

Due process requires that the defendant have "minimum
contacts" in the forum state, and that the exer cise of
jurisdiction comport with "traditional notions of fair play
and substantial justice." International Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945) (quotations omitted).
The Supreme Court has stated that "minimum contacts
must have a basis in `some act by which the defendant
purposefully avails itself of the privilege of conducting
activities within the forum State, thus invoking the benefits
and protections of its laws.' " Asahi Metal Indus. Co., Ltd. v.
Superior Court of California, 480 U.S. 102, 109 (1987)
(quoting Burger King Corp. v. Rudzewicz , 471 U.S. 462, 475
(1985)).

Personal jurisdiction may be exercised under two distinct
theories, a defendant's general or claim-specific contacts
with the forum. General jurisdiction is based upon the
defendant's "continuous and systematic" contacts with the
forum and exists even if the plaintiff 's cause of action
arises from the defendant's non-forum r elated activities.
See Vetrotex CertainTeed Corp. v. Consol. Fiber Glass Prod.
Co., 75 F.3d 147, 151 n.3 (3d Cir . 1996) (citations omitted).

7

In contrast, specific jurisdiction is present only if the plaintiff 's cause of action arises out of a defendant's forum-related activities, such that the defendant" `should reasonably anticipate being haled into court' " in that forum. Id. at 151 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The District Court found that it had general jurisdiction over the D'Ancona & Pflaum law firm, but that it did not have general jurisdiction over the individual defendants. Neither of these determinations has been questioned on appeal. Therefore, we confine our inquiry to whether the District Court can exercise specific jurisdiction over the individual defendants.

Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by Remick does not necessarily mean that it has personal jurisdiction over that same defendant as to Remick's other claims. See Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539 (3d Cir. 1985) (finding personal jurisdiction over defendant in wrongful death action with r egard to fraudulent misrepresentation and emotional distress claims but not as to plaintiffs' negligence and br each of contract claims); see also Carteret Sav. Bank, F A v. Shushan, 954 F.2d 141 (3d Cir. 1992) (examining the issue of personal jurisdiction as to plaintiff 's fraud claim separately from plaintiff 's breach of fiduciary duty claim); Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (describing specific jurisdiction as present when "the particular cause of action sued upon arose from the defendant's activities within the forum state").

In holding that it did not have specific personal jurisdiction over the individual defendants, the District Court did not conduct a claim-specific analysis except as to the breach of contract claim. It may not be necessary to do so in every multiple claim case, but because ther e are different considerations in analyzing jurisdiction over contract claims and over certain tort claims, we believe such differentiation is requir ed here.

8

A. Specific Jurisdiction Over Manfredy for Breach of Contract Claim

Remick's claims against Angel Manfredy are breach of contract and the tort claims of defamation, civil conspiracy, and misappropriation of image and likeness. In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing. See Farino, 960 F.2d at 1223.

The District Court based its decision that there was no jurisdiction over Manfredy on the breach of contract claim primarily on this court's decision in Vetrotex, where we held that the circumstances attending two supply agreements did not support the district court's exercise of specific personal jurisdiction. 75 F.3d at 152. We stated that " `informational communications in furtherance of [a contract between a resident and a nonresident] does [sic] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].' " Id. (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)). Nevertheless, we expressly acknowledged that in many instances, personal jurisdiction can arise primarily from a nonresident defendant's contract with a forum resident. In Vetrotex, we distinguished

> other cases where jurisdiction over a nonresident defendant has been premised largely on the defendant's contract with a resident of the forum state. For instance, this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state.

Id. at 152-53 (citations omitted).

Remick's contract claim is comparable to those distinguished in Vetrotex. According to Remick's affidavit, Manfredy sought Remick out by placing a telephone call to

9

Remick's associate Resnick at their office in Philadelphia. This solicitation eventually resulted in the fee agreement between Remick and Manfredy, which Remick signed in, and Manfredy signed and returned to, Pennsylvania. The agreement noted that its formality was r equired by the Pennsylvania Rules of Professional Conduct, suggesting that Manfredy was receiving the benefit of Pennsylvania law under the agreement. In addition, at least one payment was sent by Manfredy to Remick at his Philadelphia office. Most of the services performed by Remick on behalf of Manfredy were conducted at Remick's Philadelphia office, and Manfredy certainly should have expected as much as he knew that Remick's home office is in Philadelphia.

Finally, there were repeated "informational communications" during the course of the contractual relationship between Manfredy and Remick with Remick at his Philadelphia office, including the final communication -- Manfredy's termination letter of Mar ch 2, 1998. See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). These facts as a whole involved more entangling contacts than the mere "infor mational communications" at issue in Vetr otex.

Decisions in two other cases also support finding personal jurisdiction here. In Farino, we upheld jurisdiction over out-of-state defendants who had approached a Pennsylvania bank seeking to borrow money. W e quoted from the Supreme Court's decision in Burger King, where the Court commented that jurisdiction is proper where parties "reach out beyond one state and cr eate continuing relationships and obligations with citizens of another state." Farino, 960 F.2d at 1222 (quoting Bur ger King, 471 U.S. at 473). Analogizing to that situation, we stated in Farino that by approaching the bank, the defendants "establish[ed] a business relationship with a Pennsylvania entity" and "knowingly created continuing obligations with a citizen of Pennsylvania." Id. at 1223. We commented that "[w]hen a defendant has received the benefits and pr otections of the forum's laws by engaging in business activities with a

10

forum resident, the courts have `consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.' " Id.  at 1225 (quoting Burger King, 471 U.S. at 476); see also Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 65-66 (3d Cir. 1984) ("What is required . . . is actual evidence that, by entering into the contract, the particular defendant could foresee impact within Pennsylvania.").

In a situation similar to that before us, in which a Virginia law firm sued a California attorney in Virginia to collect fees after the attorney had retained the law firm as co-counsel to assist him in a California case, the Court of Appeals for the Fourth Circuit stated:

> [The defendant] initiated the relationship with [the plaintiff], knowing that [the plaintif f] was a Virginia lawyer who likely would do the requested work in Virginia. [The defendant] contracted with [the plaintiff] in Virginia, first by telephone and later in a writing that [the plaintiff], as the last party to sign, executed in Virginia. [The plaintiff] performed all of his duties under the contract in Virginia. Finally, the parties exchanged numerous telephone calls and written communications. Few examples of transacting business are more classic than [the defendant's] decision to associate a Virginia lawfirm on a case and his subsequent dealings with that firm. Because [the defendant] transacted business in Vir ginia, and because [the plaintiff 's] cause of action arose directly from those activities, the Virginia long-arm statute is satisfied.

English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (footnote omitted). Significantly, Vir ginia's long-arm statute has been interpreted, like Pennsylvania's,"to extend jurisdiction to the extent permissible under the due process clause." Id. at 38.

In light of the limiting language in Vetr otex, the factual distinctions between Vetrotex and the case at hand, and the decisions in Farino and English & Smith , we conclude that the District Court has personal jurisdiction over Manfredy for Remick's breach of contract claim and that the District Court erred as a matter of law in holding to the contrary.

11

B. Specific Jurisdiction over Individual Defendants for Defamation

Remick asserts his defamation claim against all four individual defendants as well as the law fir m. Here we consider only whether there is jurisdiction against the individual defendants on this claim.

Remick's defamation claim arises out of two letters, both sent to Remick with no copies showing any other Pennsylvania recipient. The first letter , dated March 2, 1998, was from Manfredy to Remick ter minating his representation because of alleged br oken promises and failures as a negotiator. In his affidavit, Remick states that the letter was faxed to him and that, while it was sitting on the office fax machine, his daughter (who we assume was working in the office) and an office secr etary "picked up the letter and reviewed it." App. at 68. This, Remick contends, constituted publication in Pennsylvania. The complaint also alleges that the charges in the letter wer e published "in whole or in part" by Brown and John Manfr edy to "other members of the professional boxing community," including Kushner. App. at 95-96. The second letter , dated September 11, 1998, was sent by Klaus to Remick and reiterated Manfredy's statements in the March 2nd letter that Remick was fired for inadequately representing Manfredy and urged him to stop "insist[ing] on attempting to extort money." App. at 121. Remick alleges that the letter and the charges therein were published and distributed"elsewhere into the boxing community." App. at 97.

Remick argues that the District Court has specific personal jurisdiction over the individual defendants as to his defamation claim because the allegedly defamatory statements targeted a Pennsylvania resident's forum-related activities and were published in Pennsylvania. Remick relies on Calder v. Jones, 465 U.S. 783 (1984), where the Supreme Court set forth the "effects test" for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum. Calder involved an allegedly libelous National Enquirer article written and edited in Florida and published nationwide concerning the California activities of a California resident. Because the Califor nia resident was an

12

entertainer in Hollywood, the story had its greatest impact in California. The Court held that California had personal jurisdiction over the author and editor because the "effects" of their Florida conduct were chiefly felt in California, the state in which plaintiff lived and worked. See id. at 789. The Court emphasized that the alleged tort was not "mere untargeted negligence" but rather "intentional, and allegedly tortious, actions . . . expressly aimed at [the forum state]." Id.

This court applied Calder in Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998), where we held that the Calder "effects test" requires the plaintiff to show that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66 (footnote omitted) (emphasis added).

In Imo Industries, we held that New Jersey did not have personal jurisdiction over a German corporation for tortiously interfering with the plaintiff's attempt to sell its Italian subsidiary to a French corporation because New Jersey, where the plaintiff's headquarters was located, was not the focus of the dispute. We stated that "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself . . . . The defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied." Id. at 265 (quotation omitted) (footnote omitted). We added that "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266.

13

Applying the three-part test of Imo Industries to this case, where the allegedly defamatory letters wer e written outside Pennsylvania, see Calder, 465 U.S. at 789 (finding that defamatory article written in Florida was "Florida conduct"), we conclude that Remick satisfies the first two parts. Defamation is an intentional tort and, because Remick's professional activities are center ed in Pennsylvania and the allegedly defamatory letters question Remick's pr ofessional ability, Remick may reasonably contend that he suffered the brunt of the harm in Pennsylvania. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984) (finding that individuals endure the bulk of har m from torts like defamation in their home states).

However, we believe that Remick has not met the last requirement of Imo Industries. Remick argues that because two persons in his office read the Mar ch 2nd letter while it was on the fax machine, it was published in Pennsylvania and therefore the targeting r equirement was satisfied. At oral argument, he amplified that position, contending that such publication alone was sufficient to subject the sender to personal jurisdiction. We are not persuaded because it is clear from Remick's own affidavit that the two persons in his office read the March 2nd letter solely because it was lying on the fax machine. There is no indication that the letter was targeted at them or at anyone in Pennsylvania other than Remick. Cf. Calder, 465 U.S. at 785 (finding that 600,000 copies of National Enquirer regularly sold in California). Therefore, this publication provides no basis for jurisdiction.

According to Remick, the allegedly defamatory letters and the charges therein were published throughout the boxing community, not just in Philadelphia. Significantly, Remick has not asserted that Pennsylvania has a unique relationship with the boxing industry, as distinguished from the relationship in Calder between California and the motion picture industry, with which the Calder plaintiff was associated. See Imo Industries, 155 F .3d at 264 n.7. Even if the letter itself, other than merely the charges in the letter as the complaint alleges, were distributed or shared with other persons in the professional boxing community, such persons were apparently located thr oughout the

14

country. Unlike the defendants in Calder, whose national magazine is published in California mor e than any other state and whose story focused on California, see Calder 465 U.S. at 788-89, it cannot be said that the defendants here expressly aimed their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity. The same analysis applies to the second letter . Therefore, the three-part test of Imo Industries was not met. It follows that the District Court did not err as a matter of law in holding that it lacked personal jurisdiction over the individual defendants with regard to Remick's defamation claim.

C. Specific Jurisdiction over Angel and John Manfredy for Misappropriation of Image and Likeness

For the same reason, we conclude that the District Court does not have specific jurisdiction over the Manfr edy brothers on Remick's misappropriation of image claim, a claim that Remick brings only against the two of them. That claim is based on the posting on Manfredy's old website without Remick's authorization of a single photograph of numerous persons that included Remick. The Calder "effects test" is clearly not satisfied. Given that the website was intended to provide infor mation on Manfredy and that it was accessible worldwide, there is no basis to conclude that the defendants expressly aimed their allegedly tortious activity at Pennsylvania knowing that harm was likely to be caused there. See Imo Industries, 155 F.3d at 264 (quoting Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 420 (9th Cir. 1997)).3 Any resulting harm to Remick was merely incidental. Therefor e, we agree with the District Court's determination that it lacked personal jurisdiction over the Manfredy brothers on Remick's misappropriation of image and likeness claim.

_____

3. The facts in this case do not requir e that we consider the current debate as to which fora have jurisdiction over a defendant who seeks to use its website for the solicitation of or transaction of business. The District Court summarized its view of the law in the area, in which it had concluded that the mere posting of infor mation or advertisements on an Internet website does not confer nationwide personal jurisdiction. See Remick, 52 F. Supp. 2d at 457. We do not disagree.

15

D. Specific Jurisdiction over John Manfr edy and Brown
for Tortious Interference

The final tort claim against individual defendants before
us on appeal is Remick's claim against defendants John
Manfredy and Brown for tortious inter ference with
contractual relations, which the District Court dismissed
for lack of personal jurisdiction. Remick alleges that John
Manfredy and Brown, among other things,"set[ ] Remick up
to fail in the negotiations over the Azumah Nelsonfight and
. . . publish[ed] and disseminat[ed] false and defamatory
information about Remick's skill and ability" with the intent
"to interfere[ ] and cause harm" to Remick's contract with
Manfredy. App. at 99. In his appellate brief, Remick claims
that John Manfredy and Brown engaged in this activity so
that Angel Manfredy would replace Remick with D'Ancona
& Pflaum and Brown. See Br. of Appellant at 40–41.
Tortious interference is an intentional tort, and therefore
we must apply the Calder holding, as we did in Imo
Industries, to determine the existence of personal
jurisdiction. See 155 F.3d at 266–68.

As we noted in discussing jurisdiction over the
individuals on Remick's defamation claim, the brunt of the
harm caused by the alleged intentional tort must
necessarily have been felt by Remick in Pennsylvania, as
his business practice is based in Philadelphia. Although we
concluded there that Remick could not show the
defendants expressly aimed their tortious conduct at
Pennsylvania so that this forum can be viewed as the focal
point of the tortious activity, Remick has mor e basis to
support jurisdiction on this claim. Albeit a tort, it is
necessarily related to the contract which he had entered
into with Manfredy and which is the subject of the alleged
tortious interference. Remick asserts in his affidavit that he
conducted the majority of his negotiation, consultation, and
advice services for Manfredy out of his Philadelphia office.
App. at 68. Accepting that assertion as true, it follows that
the effects of any intentional conduct by the defendants
designed to interfere with Remick's contractual relations
with Manfredy necessarily would have been felt in
Pennsylvania.

16

Further, unlike the case in Imo Industries, where the German defendant's alleged tortious conduct appeared to have been expressly aimed at injuring a Fr ench company and not the in-forum plaintiff, in this case Brown and John Manfredy's alleged tortious conduct was expr essly aimed at injuring Remick in Pennsylvania where he lives and works. That is sufficient to satisfy both Calder and IMO Industries. Thus, we conclude that the District Court err ed as a matter of law in holding that it lacked specific jurisdiction over the individual defendants with respect to Remick's claim for tortious interference.

IV.

CLAIMS AGAINST THE LAW FIRM

A. The Defamation Claim

Although we conclude that the District Court does not have personal jurisdiction over Remick's defamation claim against the four individual defendants, we must r each the merits of that claim because the court dismissed the defamation claim against the law firm of D'Ancona & Pflaum over whom it admittedly had general jurisdiction.[4] That firm is claimed to be vicariously liable as the employer of both Brown and Klaus when Angel Manfr edy sent his letter to Remick dated March 2, 1998 and Klaus sent her letter dated September 11, 1998.[5] The District Court held that Remick's complaint failed to state a claim of defamation. The sufficiency of Remick's pleading raises a question of law over which we have plenary r eview. See Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

_____

4. The District Court noted the law firm's admission "that it has records of having serviced 54 clients in Pennsylvania, some of which are present clients." Remick, 52 F. Supp. 2d at 459. This led the court to conclude that the law firm "purposefully availed itself of the privilege of conducting activities within this state to justify the exer cise of general personal jurisdiction over it." Id.

5. Although Brown did not sign the Mar ch 2nd letter, the complaint makes the general assertion that this letter "was prepared by, and/or published and disseminated to, other members of the Manfredy team," which included Brown. App. at 95.

17

As the District Court recognized, to succeed on a claim for defamation under Pennsylvania law, a plaintif f must show, inter alia, a communication capable of having defamatory meaning. See Remick, 52 F . Supp. 2d at 460; see also 42 Pa. Cons. Stat. Ann. S 8343(a)(1) (The plaintiff in a defamation case has the burden of pr oving the "defamatory character of the communication."). The trial court must determine as a matter of law whether the communication is capable of having defamatory meaning; if not, the claim should be dismissed. See Baker v. Lafayette College, 516 Pa. 291, 296, 532 A.2d 399, 402 (1987).

Under Pennsylvania law, a statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter thir d persons from associating or dealing with him." Tucker v. Fischbein, No. 99-1139, slip op. at 9 (3d Cir . January 9, 2001) (quoting Corabi v. Curtis Publ'g Co., 441 Pa. 432, 442, 273 A.2d 899, 904 (1971)). In determining whether a communication is defamatory, the court must view the statement "in context" with an eye towar d "the effect the [statement] is fairly calculated to pr oduce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." Baker, 516 Pa. at 296, 532 A.2d at 402 (quoting Corabi , 441 Pa. at 447, 273 A.2d at 907). Viewing statements in their appropriate contexts, courts must deter mine whether they "tend[ ] to blacken a person's r eputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." Corabi, 441 Pa. at 441, 273 A.2d at 904.

The District Court focused on the September 11th letter and did not address whether Remick's defamation claim can be based on the March 2nd letter fr om Manfredy. Remick's complaint alleges that the March 2nd letter accused him of: (1) failing to adequately repr esent Manfredy's interests, (2) failing to r ecognize and discharge his obligations to Manfredy, (3) failing to live up to promises he had made to Manfredy, and (4) being an inef fective negotiator and attorney.

Each of these statements expressed Manfr edy's subjective opinion. In Pennsylvania, an opinion cannot be defamatory

18

unless it "may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Baker, 516 Pa. at 297, 532 A.2d at 402 (emphasis added) (quotation omitted). In his March 2nd letter, Manfredy disclosed the factual basis behind each of his accusations. He noted five instances in which Remick failed to adequately represent his interests, including (1) Remick's business partner's refusal to convey a counter offer in negotiations for the possible Rueles fight, (2) Remick's failure to deliver a million-dollar purse following the Gatti fight, (3) Remick's failure to increase the purse for the Paez fight, (4) Remick's failure to increase the purse for the possible Nelson fight (although not referr ed to directly by name), and (5) Remick's failure to deliver a single endorsement opportunity through negotiations with Kushner.

In light of the disclosure of these factual bases, the opinions set forth by Manfredy in his Mar ch 2nd letter cannot be considered defamatory. See Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985) (finding opinion disclosing underlying facts not defamatory because"a listener may choose to accept or reject [the opinion] on the basis of an independent evaluation of the facts"); Parano v. O'Connor, 433 Pa. Super. 570, 575, 641 A.2d 607, 609 (Pa. Super. Ct. 1994) (finding incapable of being defamatory comments that appellant was adversarial, less than helpful, and uncooperative because they were subjective opinions based upon disclosed facts). Rather, they ar e "frank opinion[s] void of innuendo." Baker, 516 Pa. at 297, 532 A.2d at 402.

As for Klaus' September 11th letter, Remick asserts that the following statement is defamatory: "If you insist on attempting to extort money . . . , we will not hesitate to pursue our legal remedies, including a suit for damages arising from your failure to adequately represent Mr. Manfredy." App. at 121 (emphasis added). The District Court, assuming publication to third parties, found the statement to be nothing "other than an expr ession of opinion and dissatisfaction with Mr. Remick's performance on Mr. Manfredy's behalf." Remick , 52 F. Supp. 2d at 460. The court recognized that Remick might have found the

19

letter to be personally insulting, but it held that the letter was not capable of having defamatory meaning.

At oral argument, Remick presented the Klaus letter as stating that if Remick "continue[s] to extort" money from Kushner, Klaus and Manfredy would not hesitate to pursue legal remedies (emphasis added). The language of the letter does not so state. Admittedly, the word "extort" is a strong one. In some contexts, when published to thir d parties not involved in the dispute, the statement that one person is extorting money from another has been viewed as defamatory under Pennsylvania law. See, e.g., Frederick v. Reed Smith Shaw & McClay, 1994 WL 57213, at *11 (E.D. Pa. February 18, 1994) (finding statement that "accuses [plaintiff] with committing the crime of extortion" capable of being defamatory); Corabi, 441 Pa. at 447, 273 A.2d at 907 (finding statements that "convey[ ] to the average reader imputations of involvement in or actual guilt of crimes involving moral turpitude" capable of being defamatory); Pelagatti v. Cohen, 370 Pa. Super. 422, 439, 536 A.2d 1337, 1345 (Pa. Super. Ct. 1987) (finding that "statements to the effect that an attorney has committed improper, illegal actions within the context of his practice, would tend to impugn his integrity, and thereby blacken his business reputation"); see also DaimlerChrysler Corp. v. Askinazi, 2000 WL 964753, at *5 (E.D. Pa., July 12, 2000) (finding statement that plaintiff 's lawsuit was "a form of legalized blackmail" defamatory because it accused plaintif f of "improper professional conduct"); cf. Thomas Merton Ctr. v. Rockwell Int'l Corp., 497 Pa. 460, 466, 442 A.2d 213, 216 (1981) (noting that "a publication is defamatory if it ascribes to another `conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession' ") (quoting Restatement (Second) of Torts S 573 (1977)).

We believe this case differs fr om those, and that the Pennsylvania courts would agree. The September 11th letter was written in the context of two lawyers taking diametrically opposing legal positions. Moreover, Klaus was responding to Remick's September 2nd letter to Manfredy, in which he demanded that Manfredy revoke his termination letter and threatened to pursue legal remedies

20

of his own. Correspondence between jousting lawyers is not always drafted with the finesse, tact, and niceties used by a 19th century novelist, and, as we have previously stated, "[i]t is well settled that the use of catchy phrases or hyperbole does not necessarily render statements defamatory that would otherwise be non-actionable." Redco, 758 F.2d at 972. In this instance, the use of the term "extort" is non-defamatory "rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff 's] negotiating position extremely unreasonable." Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler, 398 U.S. 6, 14 (1970) (finding "blackmail" accusation not defamatory because no reader could have thought that plaintif f was being charged "with the commission of a criminal offense").

While the letter from Klaus probably should have been toned down, and we encourage counsel to maintain civility in their correspondence with each other r egardless of the animosity between clients, the audience to which this statement was allegedly published knew that it ar ose from bitter attorney communications.

In his complaint, Remick also alleges that Klaus' September 11th letter was defamatory because she accused him of "having committed professional malpractice." App. at 97. Although Remick doesn't identify Klaus' specific comments in either his complaint or his affidavit, in her letter Klaus refers to Remick's "failur e to perform [his] obligations to [Manfredy]" and his"failure to adequately represent Mr. Manfredy." App. at 121.

Significantly, Klaus stated in her letter that Manfredy's March 2nd letter made her assertions of pr ofessional failings "very clear." App. at 121. By reiterating and specifically incorporating Manfredy's earlier letter into her own letter, Klaus made known that any facts not disclosed in her letter were disclosed in the earlier letter. In light of the context in which this letter was written, Klaus' comments regarding Remick's professional competence would be viewed under Pennsylvania law as opinion and hence not defamatory. It follows that the District Court did not err in dismissing with prejudice Remick's claim for defamation against the law firm.

21

B. Claims of Tortious Interfer ence with Contract and Conspiracy

Remick's remaining contention on appeal is that the District Court erred in dismissing his tortious interference with contract and conspiracy claims against D'Ancona & Pflaum. As noted earlier, the basis for Remick's tortious interference claim is that Brown, while associated with the law firm, "set [Remick] up to fail in negotiations by directing him to make outlandish demands for [the Nelson] bout that Angel Manfredy was not even physically capable of fighting." Br. of Appellant at 40. Remick's conspiracy claim is predicated on the tortious interfer ence claim.

To set forth a viable cause of action for tortious interference with contract under Pennsylvania law, plaintiffs must plead the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

> (2) purposeful action on the part of the defendant, specifically intended to harm the existing r elation, or to prevent a prospective relation fr om occurring;

> (3) the absence of privilege or justification on the part of the defendant; and

> (4) the occasioning of actual legal damage as a r esult of the defendant's conduct.

Pelagatti, 370 Pa. Super. at 434, 536 A.2d at 1343.

The District Court dismissed Remick's tortious interference claim because it failed to r easonably inform the adverse party of the asserted cause of action, which the court deemed to be the requirement of Fed. R. Civ. P. 8(a)(2). The court found Remick's complaint deficient because Remick did not "advise the defendant of how its employee allegedly `set up' the plaintiff to fail in fight negotiations and what false and defamatory infor mation [Brown] is accused of disseminating and to whom." Remick, 52 F. Supp. 2d at 461.

Although the District Court dismissed the tortious interference with contract claim and the conspiracy claim

22

with leave to replead, in dismissing the court imposed a pleading requirement beyond that r equired by the Federal Rules of Civil Procedure. Under the still applicable system of notice pleading, all Remick was requir ed to do was provide "a short and plain statement of[his] claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Remick satisfied this requirement, as he put the defendants on notice as to the circumstances surrounding the alleged tortious behavior. There are discovery mechanisms, such as interrogatories, for ascertaining more details regarding the complaint allegations. Therefore, we cannot affirm the District Court's dismissal of Remick's claims for tortious interference and conspiracy against D'Ancona & Pflaum.

V.

CONCLUSION

For the foregoing reasons, we will r everse the District Court's order dismissing for lack of jurisdiction Remick's claim against Angel Manfredy for breach of contract and his claim against John Manfredy and Jeffr ey Brown for tortious interference with contractual relationships. In all other respects we will affirm the District Court's order dismissing the claims against the individual defendants. W e will affirm the dismissal with prejudice of Remick's claim against D'Ancona & Pflaum for defamation. We will r everse the order insofar as it dismissed under Rule 12(b)(6) Remick's claims against the law firm for tortious interference with contract and conspiracy. On remand, the District Court may want to address promptly the defendants' alternative motion to transfer. Each party to bear its own costs.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

23