**Richard F. STEVENS; Joanne T. Stevens; Ronald McTighe, Plaintiffs,**

v.

**Robert J. MEAUT, Defendant.**

**Civil Action No. 02–7532.**

United States District Court, E.D. Pennsylvania.

May 28, 2003.

Jeffrey Steven Moller, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, for Defendant.

Herbert M. Rafner, Howard S. Stevens, Stevens & Johnson, Allentown, PA, for Plaintiff.

## *MEMORANDUM*

BAYLSON, District Judge.

The issue presented is whether this Court has personal jurisdiction over Defendant, against whom Plaintiffs claim damages for the tort of slander of title. The facts concern the attempted sale of the "Jealous Mistress",[1] a sixty-five-foot Italian-built motor yacht. Defendant Robert J. Meaut ("Defendant"), a citizen of the U.S. Virgin Islands, moves to dismiss the Complaint filed by the yacht's owners, plaintiffs Richard F. Stevens and Joanne T. Stevens ("Stevens"), citizens of Pennsylvania, and boat broker Ronald McTighe ("McTighe"), a citizen of Florida, (collectively "Plaintiffs") for lack of personal jurisdiction. Oral argument was held on May 2, 2002. For the reasons that follow, Defendant's Motion will be denied.

## I. *Background*

Plaintiffs' Complaint alleges that the Stevens own the "Jealous Mistress", a 1997 Ferretti Motor Vessel ("yacht"), which is free and clear of all liens and encumbrances and documented by the United States Coast Guard ("Coast Guard"). (Pls.' Compl. ¶¶ 7, 10). Defen-

---

**1.** This metaphor for the sometimes quixotic pleasures of the practice of law can be traced to Supreme Court Justice Joseph Story, that the law "is a jealous mistress and requires a long and constant courtship. It is not to be won by trifling favors but by lavish homage." Joseph Story, Inaugural Address as Dane Professor of Law at Harvard University, on the subject of the Value and Importance of Legal Studies (Aug. 5, 1829), *in* JOHN BAROTLETT, FAMILIAR QUOTATIONS: A COLLECTION OF PASSAGES, PHRASES AND PROVERBS TRACED TO THEIR SOURCES IN ANCIENT AND MODERN LITERATURE 447 (Emily Morison Beck ed., Little Brown & Co.1980).

dant acted for several years as an independent contractor who captained the yacht, which the Stevens used for pleasure from its home port at the Green Cay Marina in St. Croix, U.S. Virgin Islands, *id.* ¶¶ 12, 13, where the Stevens maintain a vacation home. (Def.'s Mem. Supp. Mot. Dismiss at 1).

In March 2002, the yacht experienced engine problems, and it was taken by Defendant and others to Fort Lauderdale, Florida for repair. (Pls.' Compl. ¶¶ 15, 16). Following the repair, Plaintiffs allege that in June and July 2002, Defendant, who had been paid through July, refused to return the yacht to St. Croix because of poor weather conditions and because the yacht's motors and other equipment were unsafe. *Id.* ¶¶ 17, 18, 21. The Stevens claim that Defendant told them that their only option was to sell the yacht and give up boating. *Id.* ¶ 19. The Stevens assert that Florida boat broker McTighe then made "considerable efforts" to sell the yacht. *Id.* ¶ 22. After McTigue failed to find any prospective buyers, he suggested that the Stevens donate the yacht to the American Institute of Marine Studies ("AIMS") in Fort Lauderdale, Florida in exchange for cash and a charitable deduction. *Id.* ¶¶ 24, 25. The Stevens and AIMS reached an agreement, and a documentation search conducted through the Coast Guard showed that there were no liens and encumbrances on the yacht. *Id.* ¶¶ 26–28.

In September 2002, Plaintiffs allege that Defendant informed AIMS that he had filed a lien against the yacht with the Coast Guard and that this statement was false. *Id.* ¶¶ 31–35. Upon receiving Defendant's notice, AIMS sent the Stevens in Pennsylvania a written notice cancelling the transaction and requesting that the Stevens return by wire transfer the $550,000 that AIMS paid them for the yacht. *Id.* ¶¶ 36, 37, Ex. A. The Stevens, in Pennsylvania, returned the $550,000 to AIMS. Plaintiffs claim that Defendant's statements to AIMS were false and fraudulent, that although Defendant attempted to file a notice of lien with the Coast Guard in July 2002, that notice was rejected and returned to him, which Defendant knew at the time he told AIMS a lien existed. *Id.* ¶¶ 39–42, Ex. B. Plaintiffs attached a copy of the Notice of Claim of Lien, which states in pertinent part:

> Amount of Lien: $88,200.00
>
> Nature of Lien: The lien is placed on July 13, 2002.
>
> Robert J. Meaut, claimant, is the captain on the above documented vessel owned by Richard F. Stevens owner of the above documented vessel. Richard F. Stevens agreed to pay Robert J. Meaut, a bonus equal to 7% of the net selling price, at settlement, when the above documented vessel is sold by Richard F. Stevens to the next owner(s).

(Pls.' Compl. Ex. B).

Plaintiffs claim that the lien as well as the amount of the lien are fraudulent because no sale was contemplated as of July 13, 2002, and that when Defendant contacted AIMS about the lien he already knew from McTighe that the yacht was being donated to AIMS. (Pls.' Compl. ¶ 51).

The Stevens claim damages in excess of $100,000 as a result of the loss of the donation as well as continued expenses for insurance, dockage, and maintenance, depreciation, a lost charter, and accountant's and appraisal fees. *Id.* ¶ 52. Plaintiff McTighe claims damages for his lost commission in the amount of $60,000, and his loss of opportunity to represent AIMS in a future sale of the yacht, as well as damage to his reputation in the brokerage community. *Id.* ¶ 53. Plaintiffs seek $1 million in punitive damages. *Id.*

## II. *Legal Standard*

Fed.R.Civ.P. 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic Resorts,* 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 PA. CONS.STAT. § 5322(b). The statute also permits jurisdiction over a non-resident if the non-resident has "[c]aused harm or tortious injury by an act or omission in this Commonwealth" or "[c]aus[ed] any harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." § 5322(a)(3), (4).

Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Remick,* 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). When determining whether personal jurisdiction exists, the court must resolve the question based on the circumstances that the particular case presents. *Burger King,* 471 U.S. at 485, 105 S.Ct. 2174.

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. General jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. *General Elec. Co. v. Deutz Ag,* 270 F.3d 144, 150 (3d Cir.2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.,* 75 F.3d 147, 151 (3d Cir.1996) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Specific jurisdiction is established where a non-resident defendant has "purposefully directed" activities at a resident of the forum and the injury arises from or is related to those activities. *Deutz Ag,* 270 F.3d at 150 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174).

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir.1996), *cert. denied,* 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996). The plaintiff must establish those contacts with reasonable particularity; he may not rely on general averments in the bare pleadings. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *Atlantic Resorts,* 735 F.2d at 66 n. 9. If the plaintiff makes out a *prima facie* case in favor of personal

jurisdiction, the burden shifts to the defendant to establish that the presence of some other considerations would render jurisdiction unreasonable. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir.1992).

> [T]he pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff. In sharp contrast to the summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal.... [This rule] prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts....

*Kishi Int'l, Inc. v. Allstates Textile Mach., Inc.*, No. CIV.A.96–6110, 1997 WL 186324, at *3 (E.D.Pa. Apr.11, 1997) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991)).

Plaintiffs allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000. (Pls.' Compl. ¶ 5).

### III. *Discussion*

Defendant, a professional yacht captain and citizen of the U.S. Virgin Islands, has never resided in Pennsylvania, does not own property here, does not conduct business here, and has never maintained an office, telephone listing, or bank account here. (Meaut Aff. ¶¶ 1–4, Def.'s Mot. Dismiss, Ex. A).

Defendant met the Stevens in the U.S. Virgin Islands in 1993 and was hired in 1998 to serve as the captain and engineer of the yacht, which had been purchased that year and was docked in St. Croix. *Id.* ¶¶ 5, 7, 9. Defendant states that as partial compensation for his services, he entered into a deferred compensation agreement with the Stevens in the U.S. Virgin Islands, whereby he would receive two percent of the proceeds of the sale of the yacht for every year of his employment. *Id.* ¶ 10. During the time that Defendant captained the yacht, it never traveled to Pennsylvania, and remained exclusively in the Caribbean or the waters near Florida. *Id.* ¶ 11. Defendant initially maintained that virtually all of his dealings with the Stevens regarding his services as captain took place in the U.S. Virgin Islands, that he could not recall receiving any communications from Pennsylvania regarding his employment, and that he directed virtually no communications to Pennsylvania regarding his employment. *Id.* ¶¶ 12–14.

The Court granted discovery limited only to the issue of personal jurisdiction, and during that time, Defendant's deposition was taken. His deposition responses varied significantly from his affidavit.

For example, in his affidavit, Defendant initially stated that his only physical contact with Pennsylvania began in 1998, when he traveled here with his wife for her cancer treatment. *Id.* ¶ 20. During that initial visit, he stated that he and his wife remained in Pennsylvania for several weeks for her diagnosis, surgery, and recuperation. *Id.* ¶ 21. Since her surgery, he stated he returned with his wife to Pennsylvania for no more than one week per year for her cancer treatment. *Id.* ¶ 22. He also stated that he traveled to Pennsylvania for surgery to remove his gall bladder, and he remained here for several days for that purpose. *Id.* ¶ 23.

In his deposition, Defendant admitted to traveling to Pennsylvania with his wife for her cancer treatments and staying with the Stevens in their Pennsylvania home for free while accompanying his wife for her treatments; calling Plaintiffs in Pennsylva-

nia about the yacht, receiving calls from Plaintiffs, who were in Pennsylvania; receiving monthly pay checks drawn from the Stevens' Pennsylvania bank; receiving a credit card from the Stevens to use for the yacht; and buying goods for the yacht and shipping them to Joanne Stevens in Pennsylvania. (Meaut Dep. at 13–14, 17–18, 21–24, 32–34, 47–48, 59–60, Pls.' Supplemental Br. Supp. Jurisdiction, Ex. C).

Plaintiffs argue that Defendant is subject to personal jurisdiction because Defendant allegedly committed the tort of slander of title, which Plaintiffs claim Defendant purposely directed toward Pennsylvania. (Pls.' Resp. Def.'s Mot. Dismiss at 3). This allegation now will be examined.

## A. General Personal Jurisdiction

■ Plaintiffs do not allege general personal jurisdiction nor does the underlying Complaint allege that Defendant has systematic and continuous contacts with Pennsylvania. The claims against Defendant relate only to his allegedly committing the tort of slander of title by allegedly attempting to file with the Coast Guard a false lien against the yacht and by informing AIMS that he had a lien against the yacht. Therefore, the Court has no basis to exercise general personal jurisdiction over Defendant.

## B. Specific Personal Jurisdiction

Plaintiffs allege that the Court should exercise specific personal jurisdiction over Defendant because Defendant directed his allegedly tortious activities toward Pennsylvania. (Pls.' Resp. Def.'s Mot. Dismiss at 3). They assert that the yacht is titled in Pennsylvania and that is where the Stevens made their contract with AIMS to sell it. (Pls.' Br. Supp. Resp. Def.'s Mot.

Dismiss at 7). They argue that AIMS sent the $550,000 for the sale of the yacht to them in Pennsylvania, and that they returned the money to AIMS from their Pennsylvania bank account. *Id.* They further state that all of their conversations with McTighe occurred while the Stevens were in Pennsylvania and that AIMS spoke with the Stevens' accountant while the accountant was in Pennsylvania. *Id.* Plaintiffs assert that the "stain on the title" does not physically harm the yacht but rather "hurts the Pennsylvania owners and those that have relied upon the representations and promises of the Pennsylvania owners, i.e. AIMS.[2] The promises all emanated from Pennsylvania." *Id.* at 8.

### 1. Imo Industries Test

In an intentional tort case, in order to determine if personal jurisdiction exists, the plaintiff must allege facts sufficient to meet the "effects test" established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), for determining personal jurisdiction over non-resident defendants who allegedly commit torts outside the forum. *Calder* involved an allegedly libelous *National Enquirer* article written and edited in Florida and published nationwide concerning the activities of a California resident in California. 465 U.S. at 784, 104 S.Ct. 1482. The Court found that personal jurisdiction was proper in California because the plaintiff was an entertainer whose television career was centered in California, the article was drawn from California sources, the "effects" of the defendants' Florida conduct were chiefly felt in California, "their intentional, and allegedly tortious actions, were expressly aimed at California" and they "knew that the brunt

---

2. Plaintiffs concede that AIMS lost the benefit of the donation in Florida, but AIMS is not a party to this action. (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 8 n. 7).

of [their actions] would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Id.* at 788–90, 104 S.Ct. 1482.

The Third Circuit narrowly interpreted *Calder* and first articulated its three-part effects test in *Imo Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 256 (3d Cir.1998):

First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm caused by the plaintiff as a result of that tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

In *Imo Industries,* the Third Circuit applied the three-part effects test and rejected the plaintiff corporation's argument that the defendant, a German corporation, had "expressly aimed" its conduct toward New Jersey, the location of the plaintiff's corporate headquarters and selected forum. *Id.* at 256–57. The plaintiff had asserted a claim for tortious interference with contract against the defendant, alleging that the defendant's threat to revoke its licensing agreement with the plaintiff's Italian subsidiary prevented the plaintiff from selling that entity. *Id.* at 256. The defendant's letters regarding the potential license revocation were sent only to New York and Italy, and later forwarded to New Jersey. *Id.* at 257–58. The plaintiff initiated all phone conversations between New Jersey and Germany, and the parties met in Canada and Germany. *Id.* at 258. Although it acknowledged that the defendant may have known that its conduct would have effects in New Jersey, the Court found that the defendant had not "expressly aimed its tortious conduct" at

New Jersey. *Id.* at 268. After the Court reviewed numerous cases in which the defendant sought to dismiss the corporate plaintiff's complaint for lack of personal jurisdiction, the Court noted that:

[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*. In all of those cases, the plaintiffs failed to point to other actions that adequately demonstrated that the defendants targeted (or "expressly aimed" their conduct) at the forum, and thereby showed that the forum was the focal point of the tortious activity. *See also General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1387–88 (8th Cir.1993) (concluding that *Calder* is of little help to a plaintiff where the "focal point of the alleged wrongdoing" occurred outside of the forum even where the "effects of the harm" occurred in that state); *Noonan v. Winston Co.,* 135 F.3d 85, 90–91 (1st Cir.1998) (holding that *Calder* test was not satisfied because defendants did not target forum even though plaintiffs felt tortious conduct there). Moreover, *Calder* requires that the "brunt" of the harm be felt in the forum. *See Calder,* 465 U.S. at 789, 104 S.Ct. 1482. These cases cast doubt on the assertion that a company will feel the "brunt" of a tort injury at its principal place of business when that injury is based on damage to contracts or property not centered in the forum.

*Id.* at 263.

The Court justified its restrictive interpretation of *Calder* as follows:

We recognize that a conservative reading of *Calder* may significantly limit the types of business tort cases that will satisfy the requirements of personal jurisdiction via the "effects test." Yet, we believe that such a result is consistent

with the Supreme Court's intended relationship between *Calder* and the traditional minimum contacts analysis. *Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry "focuses on the relations among the defendant, the forum, and the litigation." *See Keeton* [*v. Hustler Magazine, Inc.*], 465 U.S. [770,] 780, 104 S.Ct. 1473, [79 L.Ed.2d 790 (1984) ]. Nor did *Calder* carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state. What *Calder* did was recognize that, under certain circumstances, the "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum. Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises." *Keeton*, 465 U.S. at 780, 104 S.Ct. 1473 (citing *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482). That is, the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum—which otherwise would not satisfy the requirements of due process—sufficient.

*Id.* at 265.

The *Imo Industries* test also was applied in *Remick v. Manfredy*, 238 F.3d 248 (3d Cir.2001). *Remick* involved claims of defamation and tortious interference with contract by a Pennsylvania lawyer who sued his former client, an Indiana resident, and his client's Illinois agent, lawyers, and law firm. *Id.* at 252–55. The Third Circuit affirmed the district court's holding that it lacked personal jurisdiction over the individual defendants regarding the plaintiff's defamation claim. *Id.* at 258–59. The Court focused on an allegedly libelous letter to the plaintiff from his client which

terminated the plaintiff's representation. *Id.* at 257. The letter had been faxed to the plaintiff's Philadelphia law office, and the plaintiff argued that because two staff members read the letter while it was in the fax machine, it was published in Pennsylvania, and personal jurisdiction over his defamation claim against the individuals was proper. *Id.* at 257–58. The Third Circuit rejected this argument, finding that the third part of the *Imo Industries* test had not been met because there was "no indication that the letter was targeted at them [staff members] or at anyone in Pennsylvania other than [plaintiff]," so it "cannot be said that the defendants here expressly aimed their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity." *Id.* at 259.

With respect to the claim of tortious interference with contract, The Third Circuit reversed the district court's holding that it lacked personal jurisdiction over the individual defendants. *Id.* at 260. The Court explained its reasoning as follows:

> As we noted in discussing jurisdiction over the individuals on Remick's defamation claim, the brunt of the harm caused by the alleged intentional tort must necessarily have been felt by Remick in Pennsylvania, as his business practice is based in Philadelphia. Although we concluded there that Remick could not show the defendants expressly aimed their tortious conduct at Pennsylvania so that this forum can be viewed as the focal point of the tortious activity, Remick has more basis to support jurisdiction on this claim. Albeit a tort, it is necessarily related to the contract which he had entered into with Manfredy and which is the subject of the alleged tortious interference. Remick asserts in his affidavit that he conducted the majority of his negotiation, consultation, and advice services for Manfredy out of

his Philadelphia office. App. at 68. Accepting this assertion as true, it follows that the effects of any intentional conduct by the defendants designed to interfere with Remick's contractual relations with Manfredy necessarily would have been felt in Pennsylvania.

Further, unlike the case in *IMO Industries,* where the German defendant's alleged tortious conduct appeared to have been expressly aimed at injuring a French company and not the in-forum plaintiff, in this case Brown and John Manfredy's alleged tortious conduct was expressly aimed at injuring Remick in Pennsylvania where he lives and works. That is sufficient to satisfy both *Calder* and *IMO Industries.* Thus, we conclude the District Court erred as a matter of law in holding that it lacked specific jurisdiction over the individual defendants with respect to Remick's claim for tortious interference.

*Id.* at 260.

In the instant case, the parties are individuals as in *Remick,* not corporations, as in *Imo Industries.* The alleged tortious conduct is not a business tort, and Plaintiffs do not rest on the mere allegation that Defendant knew that the effects of his allegedly tortious conduct would be felt by Plaintiffs in the forum merely because Plaintiffs lived there. Such an allegation would be insufficient to satisfy the third prong of the *Imo Industries* test. Rather, an extensive review of Plaintiffs' allegations, bolstered by the record of discovery submitted by the parties on the Motion to Dismiss, particularly the affidavit of Richard F. Stevens, summarized below, as advocated at oral argument, reveals that Plaintiffs have satisfied the *Imo Industries* test. Defendant's articulate arguments do not give Plaintiffs the full benefit of the favorable construction of their allegations concerning the alleged tort, the deposition of Defendant, and Richard F. Stevens' sworn affidavit, to which they are entitled at this stage of the case.

The tort of slander of title is what is charged. The Court concludes that Plaintiffs have proven the requisite personal jurisdiction as relevant to the alleged tortious conduct, and concludes that it is not unfair to Defendant to require him to defend this charge in this district.

### a. *Intentional Tort*

■ Plaintiffs allege that Defendant committed the intentional tort of slander of title by falsely and maliciously stating that he had a lien against the yacht. (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 3, 5). This tort involves the "false and malicious representation of the title and quality of another's interest in goods or property." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,* 570 Pa. 242, 809 A.2d 243, 246 (2002). The Restatement (Second) of Torts § 623 A labels this tort "injurious falsehood," which is actionable where:

1) the statement is false;

2) the publisher intends the statement to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;

3) pecuniary loss results; and

4) the publisher either knows the statement is false or acts in reckless disregard of its truth or falsity.

*Id.*

■ Plaintiffs Claim that Defendant knew on July 13, 2002, the date he attempted to file the lien against the yacht, that the Stevens did not intend to sell it. (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 2). However, Defendant asserts that when he took the yacht to Florida for repairs in April 2002, it already had been for sale for two years. (Meaut Aff. ¶ 15, Def.'s Mot. Dismiss, Ex. A). He states that

"Mr. and Mrs. Stevens had advertised the Jealous Mistress for sale with Ronald McTighe, a boat broker based in Florida, for two years prior to this trip. While the Jealous Mistress was in Florida it continued to be offered for sale." *Id.*

The Stevens concede that this statement is "technically true" but "completely misleading." (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 3 n. 2). They state that they contemplated buying an 80–foot Ferretti, but that the 65–foot Jealous Mistress would have to be sold before another could be purchased. *Id.* They assert that after the engine problem with the Jealous Mistress, the "sale idea was scrapped" and they intended to keep it. *Id.* These assertions do not refute Defendant's contention that the yacht had been for sale for two years when he took it to Florida to be repaired in April 2002. They also contradict the Stevens' assertion in the Complaint that they decided to sell the yacht only after Defendant informed them that the yacht was unsafe and that selling it was their only option. (Pls.' Compl. ¶¶ 17–19, 21–22).

Nevertheless, Plaintiffs have alleged requisite facts for the intentional tort of slander of title, and therefore they satisfy the first part of the *Imo Industries* test.

### b. *Brunt of Harm*

█ Plaintiffs claim that the brunt of the harm was felt in Pennsylvania because the Stevens, living in Pennsylvania, were required to and did return the $550,000 AIMS had paid them. (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 5). In support of their allegations that they suffered the brunt of the harm in Pennsylvania, the Stevens initially only provided the letter from AIMS cancelling the donation and requesting the return of the $550,000 for the bargain sale donation. (Pls.' Resp. Def.'s Mot. Dismiss, Ex. A). "[T]he mere allegations that the Plaintiff feels the effect of the Defendant's tortious conduct in the forum because the Plaintiff is located there is insufficient to satisfy *Calder*." *Imo Industries,* 155 F.3d at 263.

An affidavit likely would have satisfied the second part of the *Imo Industries* test. *See Harris v. Trans Union, LLC,* 197 F.Supp.2d 200, 205 (E.D.Pa.2002) ("[The plaintiff] states in his affidavit that '[a]ll of the damages that I have suffered, financially, emotionally, as well as that to my reputation, as far as I am aware, occurred within the Commonwealth of Pennsylvania.' Since [plaintiff] 'felt the brunt of the harm in the forum,' he has met the second prong.").

█ In their Supplemental Brief in Support of Jurisdiction, Plaintiffs attached a 15–page affidavit by Richard F. Stevens containing numerous facts, namely that "all the financial transactions involving the Ferretti were always handled in Pennsylvania" and that "Defendant knew the title was in Pennsylvania, that all financial matters were handled through Pennsylvania and that the harm from his action would be felt by Plaintiffs in Pennsylvania.... The harm was felt in Pennsylvania." (Stevens Aff. ¶¶ 11, 42, Pls.' Supplemental Br. Supp. Jurisdiction, Ex. A). Defendant has not refuted these facts, except to argue they are legally insufficient.

Therefore, Plaintiffs have satisfied the second part of the *Imo Industries* test.

### c. *Conduct Expressly Aimed at Forum*

█ Finally, Plaintiffs contend that Defendant expressly aimed his tortious conduct at Pennsylvania, and that Pennsylvania is the focal point of that conduct. (Pls.' Br. Supp. Resp. Def.'s Mot. Dismiss at 8 n. 7). In his affidavit, Plaintiff Richard F. Stevens alleges that Defendant was in-

volved in the December 1998 purchase of the yacht at Plaintiffs' Pennsylvania home, and that is where Defendant agreed to act as the yacht's captain. (Stevens Aff. ¶¶ 6, 23, Pls.' Supplemental Br. Supp. Jurisdiction, Ex. A). He also asserts the following:

All the financial transactions involving the Ferretti were always handled in Pennsylvania, see Exhibit 2 and 3 attached hereto. Exhibit 2 covers all payments to Defendant involving the boat. Most months, Defendant e-mailed his monthly invoice to Plaintiffs in Pennsylvania. The payments to Defendant were made by checks drawn on a Pennsylvania bank, National Penn, and were generally mailed from Pennsylvania to him. The last one for July, 2002, was delivered to him, personally, at 7081 Bell Gate Farm [Plaintiffs' Pennsylvania home] where he and his wife were vacationing with us. Exhibit 3 lists other expenses for the boat which were all paid through National Penn Bank.

The Marina on Exhibit 3 is the Green Cay Marina where the boat was docked in St. Croix. The marine mailed the charges to Plaintiffs in Pennsylvania. The checks to pay same were all mailed from Pennsylvania. The marina changes to Tamarin on Exhibit 3 because the boat changed slips, but it is still the same Marina. . . .

The other miscellaneous items on Exhibit 3 are all expenses for the boat paid from Pennsylvania.

The expenses from the boat were never paid from any location other than Pennsylvania.

. . . . . .

[Defendant] states the vessel "never traveled to Pennsylvania" in paragraph 11 of his Affidavit. What he does not say is that, after the boat was repaired in Florida, after the blown engine, we

wanted him to bring the boat to Pennsylvania so we could use it up here during the summer and fall of 2002. He refused to bring it to Pennsylvania. What we did not know at the time of those discussions about coming to Pennsylvania, was that he intended to quit. But the reason the boat was not in Pennsylvania was because of him. . . .

While most actions involving using the boat and maintaining it were in the Caribbean, *all of the financial involvements originated in Pennsylvania* and there were multiple monthly telephone and fax communications from Pennsylvania to the Caribbean. Thus, paragraphs 13 and 14 are also inaccurate.

*Id.* ¶¶ 11, 26–27 (emphasis in original).

The Court believes it must accept these factual statements as true for purposes of ruling on Defendant's Motion to Dismiss, and finds the Plaintiffs' factual presentations to be credible for purposes of ruling on a Motion to Dismiss.

Defendant asserts that Pennsylvania cannot be said to be the focus of the alleged tortious conduct. (Def.'s Reply Br. Mot. Dismiss at 6.) He claims that the yacht was never in Pennsylvania, was not titled under the boat registration laws of Pennsylvania, but rather was documented as a "U.S. flag vessel" with the Coast Guard's documentation center in West Virginia. *Id.* He avers that the yacht's certificate of documentation lists the Stevens' addresses in both Pennsylvania and the U.S. Virgin Islands, that AIMS, the buyer, was a Florida organization, and the boat broker is a citizen of Florida. *Id.*

In his deposition, Defendant denied agreeing to serve as the yacht's captain while he was at Plaintiffs' Pennsylvania home. (Meaut Dep. at 28, Pls.' Supplemental Br. Supp. Jurisdiction, Ex. C). However, he admitted to calling Plaintiffs

in Pennsylvania about the yacht, receiving calls from Plaintiffs, who were in Pennsylvania; receiving monthly pay checks drawn from the Stevens' Pennsylvania bank; traveling to Pennsylvania with his wife for her cancer treatments and staying with the Stevens in their Pennsylvania home for free while accompanying his wife for her cancer treatments; receiving a credit card from the Stevens to use for the yacht; and buying goods for the yacht and shipping them to Joanne Stevens in Pennsylvania. *Id.* at 13–14, 17–18, 21–24, 32–34, 47–48, 59–60. Defendant also admitted to being in Pennsylvania in June 2002 and discussing the Ferretti with Plaintiffs, specifically "talking about taking the boat and bringing it up north, bringing it out of Florida, bringing it into Pennsylvania or New York." *Id.* at 29.

Of particular significance is the lien, which Defendant caused to be placed against the yacht, and which is properly characterized as false, based on the record. Plaintiffs' theory of liability is that Defendant knew that as a result of the lien, Plaintiffs would be required to return the $550,000 AIMS paid them, and this was in fact done by Plaintiffs, living in Pennsylvania, from Pennsylvania. Although the Court does not now make any findings as to liability, the Court does find sufficient conduct by Defendant to warrant a conclusion for jurisdictional purposes, that he aimed his allegedly tortious conduct at Plaintiffs in Pennsylvania.

At oral argument, defense counsel vigorously contended that Plaintiffs could not rest on any "foreseeability" test, i.e., whether Defendant could have foreseen that his conduct would injure Plaintiffs in Pennsylvania. The Court accepts this interpretation of the legal standard, but nonetheless finds the factual record, at this stage of the case, sufficient to allow Plaintiffs to proceed on their liability theory

that Defendant "expressly aimed" his allegedly tortious conduct at Pennsylvania, such that Pennsylvania can be said to be the focal point of that activity. *Imo Industries*, 155 F.3d at 256. Plaintiffs have shown that Defendant knew Plaintiffs would be injured in Pennsylvania, and Pennsylvania is where the Plaintiffs suffered their financial losses, according to their theory of the case (which is very similar to the facts underlying the tortious interference claim in *Remick, supra*). Plaintiffs have adequately supported their liability theory with credible facts relevant to jurisdiction sufficient to establish jurisdiction over Defendant, in opposition to Defendant's Motion under Rule 12(b)(2) to dismiss for lack of jurisdiction. Therefore, Plaintiffs have satisfied the third part of the *Imo Industries* test.

### IV. "Traditional Notions of Fair Play and Substantial Justice"

■ It appears that Defendant had sufficient minimum contacts with Pennsylvania to warrant jurisdiction, so it must now be determined whether the Court's exercise of personal jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice." *Remick*, 238 F.3d at 255 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154). The burden falls on Defendant to show that these principles will be offended by this Court's exercise of jurisdiction. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir.1990). Defendant cannot meet this burden. The interests of the Commonwealth of Pennsylvania and Plaintiffs would be substantially furthered by hearing the case in this Court. The Stevens, who are Pennsylvania residents, should be able to seek a remedy in their home state. It would be no more unfair for Plaintiffs to bring Defendant into a Pennsylvania court than it would be to force Plaintiffs to litigate in the Virgin Islands. Pennsylvania

also has an interest in assuring that its residents have a convenient forum to remedy tort actions, particularly an intentional tort where the brunt of the harm was felt in Pennsylvania and the conduct was aimed at Pennsylvania. Therefore, the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

## V. *Conclusion*

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

An appropriate Order follows.

### *ORDER*

AND NOW, this 28th day of May, 2003, upon consideration of Defendant's Motion to Dismiss For Lack of Personal Jurisdiction (Doc. No. 3), Plaintiff's Response (Doc. No. 5), and Defendant's Reply (Doc. No. 6), and after holding oral argument, it is hereby

ORDERED that Defendant's Motion is DENIED.