NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1362
_____

RENITA HILL, an individual,

Appellant

v.

WILLIAM HENRY COSBY, JR.,
an individual, also known as BILL COSBY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-15-cv-01658)
Honorable Arthur J. Schwab, U.S. District Judge
_____

Argued October 7, 2016

BEFORE: SHWARTZ, COWEN, and ROTH, Circuit Judges

(Filed: December 14, 2016)

_____

OPINION*
_____

George M. Kontos, Esq. (Argued)
Claire McGee, Esq.
Kontos Mengine Law Group
603 Stanwix Street

_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Two Gateway Center, Suite 1228
Pittsburgh, PA 15222

*Counsel for Appellant*


Angela C. Agrusa, Esq. (Argued)
Liner
1100 Glendon Avenue
14th Floor
Los Angeles, CA 90024

Brian C. Bevan, Esq.
Efrem M. Grail, Esq.
The Grail Law Firm
436 Seventh Avenue
Koppers Building, 30th Floor
Pittsburgh, PA 15219

Marshall M. Searey, III, Esq.
Christopher Tayback, Esq.
Quinn Emanuel Urquhart & Sullivan
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017

Emily M. Smith, Esq.
Quinn Emanual Urquhart & Sullivan
711 Louisanna Street
Suite 500
Houston, TX 77002

*Counsel for Appellee*

COWEN, <u>Circuit</u> <u>Judge</u>


Plaintiff Renita Hill appeals from the order of the United States District Court for

the Western District of Pennsylvania granting Defendant William H. Cosby, Jr.'s motion

2

to dismiss her complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  We will affirm.

I.

According to Hill's complaint, Cosby—"an internationally known comedian, actor and author" (A45)[1]—drugged and sexually assaulted her.  Specifically, the alleged abuse began in (approximately) 1983, when she was a sixteen-year-old high school student recruited by Cosby to co-host a children's television program.  Cosby presented himself as Hill's mentor and paid for her college tuition.  The alleged abuse ended around 1987, after she had completed her second year in college (at which time Hill cut off any contact with Cosby, and he stopped paying her tuition).  Hill claimed that Cosby would meet her in his hotel room and give her a drink containing drugs that affected her consciousness, memory, and perception (and when she indicated that she did not want to drink, Cosby would threaten to terminate "his purported tutelage" (A49)).  "While she was in this semi-conscious or unconscious state, Renita was sexually assaulted by Defendant Cosby."  (Id.)

Hill allegedly did not come forward at the time of the abuse because she was too intimidated and afraid to do so.  While "Cosby was extremely powerful, wealthy and influential in status," Hill "was young, impressionable, and seemingly powerless."  (Id.) She also did not know that other women had allegedly suffered similar abuse.  For the next twenty years, Hill maintained her silence.  In 2005, Andrea Constand claimed that Cosby had drugged and sexually assaulted her.  In the civil lawsuit she filed against

---

[1] "A" refers to the appendix, and "SA" refers to the supplemental appendix.

3

Cosby, Constand named thirteen other alleged victims, and, before her case was settled, a number of these women had come forward with their own accusations. On or about November 13, 2014, Barbara Bowmen "penned an op-ed in the Washington Post titled 'Bill Cosby raped me. Why did it take 30 years for people to believe my story?'" (A50.) More accusers then came forward.

Emboldened by these women's example, Hill decided to share her own story. On November 20, 2014, she was interviewed by Ralph Ianotti, a reporter with KDKA. "In the interview, Renita revealed much of the above-mentioned fact pattern and explained that she felt compelled to come forward after hearing Cosby's [sic] criticize the other woman who came forward." (A51.)

According to Hill, Cosby retaliated against her and the other abuse victims by publishing statements designed to bring into question their honesty and motivations. Hill highlighted three such statements: (1) a November 21, 2014 statement by Cosby's attorney, Martin Singer, Esq., given to The Washington Post for use in an article published on November 22, 2014 entitled "'Bill Cosby's legacy, recast: Accusers speak in detail about sexual-assault allegations'" ("Singer Statement") (A52); (2) a statement made by Cosby himself during an interview conducted on or about the same day by Florida Today ("Florida Today Statement"); and (3) a December 15, 2014 letter published by The Washington Post written by his wife and business manager, Camille Cosby ("Camille Cosby Statement").

4

According to Singer:

The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.

These brand new claims about alleged decades-old events are becoming increasingly ridiculous and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.

Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.

This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop out of the woodwork. When will it end?

It is long past time for this media vilification of Mr. Cosby to stop.

(A51-A52.)

In her complaint, Hill focused on the following excerpt from Cosby's Florida

Today interview:

I know people are tired of me not saying anything, but a guy doesn't have to answer to innuendos. People should fact-check. People shouldn't have to go through that and shouldn't answer to innuendos.

(A52.) Cosby provided the District Court with the Florida Today Statement in its

entirety:

5

So today I was informed of this radio station that is offering money for people to stand up and heckle in order to collect prizes and money.

The thing is, these people are prodding and pushing people and asking people to have a frat house mentality. Now suppose someone brings a weapon or decided to do more foolishness. There will be announcements made and the stations made some disclaimers, but what if people don't listen to what they said and they entice violence. That's not good for anyone.

When you go to a civil rights march or something like that, at least there are meetings and some organization to it and people understand how to behave. There may be people coming to the show that don't know exactly what to do; there is no organization to it all.

I know people are tired of me not saying anything, but a guy doesn't have to answer to innuendos. People should fact-check. People shouldn't have to go through that and shouldn't answer to innuendos.

(SA2 (emphasis omitted) (citing A52).)

Hill alleged that Camille Cosby questioned the victims' honesty by stating that "'[T]here appears to be no vetting of my husband's accusers before stories are published or aired.'" (A53.) "In an apparent attempt to cast further doubt on the honestly [sic] of Defendant Cosby's accusers, Camille Cosby also compared the accusations to alleged rape accusations at the University of Virginia, which eventually were proven to have been fabricated." (Id.) According to Cosby, his wife stated the following:

I met my husband, Bill Cosby, in 1963, and we were married in 1964. The man I met, and fell in love with, and whom I continue to love, is the man you all knew through his work. He is a kind man, a generous man, a funny man, and a wonderful husband, father and friend. He is the man you thought you knew.

A different man has been portrayed in the media over the last two months. It is the portrait of a man I do not know. It is also a portrait painted by individuals and organizations whom many in the media have given a pass.

6

There appears to be no vetting of my husband's accusers before stories are published or aired. An accusation is published, and immediately goes viral.

We all followed the story of the article in "Rolling Stone" concerning allegations of rape at the University of Virginia. The story was heart-breaking, but ultimately appears to be proved to be untrue. Many in the media were quick to link that story to stories about my husband – until that story unwound.

(SA2-SA3 (emphasis omitted) (citing A52-A53).)

Hill filed a civil action against Cosby in the Pennsylvania Court of Common Pleas of Allegheny County. She asserted three claims: (1) defamation/defamation per se; (2) false light; and (3) intentional infliction of emotional distress (or "IIED"). Cosby removed the action to the District Court on diversity grounds, and he moved to dismiss for failure to state a claim upon which relief can be granted.[2]

The District Court granted Cosby's motion and dismissed Hill's complaint with prejudice. See Hill v. Cosby, 15CV1658, 2016 WL 491728 (W.D. Pa. Feb. 9, 2016).

II.

The District Court did not commit reversible error by granting Cosby's motion to dismiss under Rule 12(b)(6).[3] We begin with Hill's defamation claim and, specifically,

---

[2] Meanwhile, the United States District Court for the District of Massachusetts denied Cosby's motion to dismiss the defamation claims brought by three other alleged victims. See Green v. Cosby, 138 F. Supp. 3d 114 (D. Mass. 2015).

[3] The District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

The Court exercises plenary review over a district court's order granting a motion to dismiss for failure to state a claim upon which relief can be granted. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Black v. Montgomery Cty., 835 F.3d 358,

7

the Singer Statement. Assuming that a reasonable recipient could read the attorney's statement as offering an opinion—on the basis of underlying facts—that Hill lied, we nevertheless determine that Singer disclosed these underlying facts. We also conclude that no reasonable recipient could interpret Cosby's Florida Today Statement as implying the existence of undisclosed defamatory facts. The Camille Cosby Statement similarly failed to implicate underlying facts regarding Hill's accusations or to satisfy the "of and concerning" requirement. Insofar as each statement was not capable of a defamatory meaning, the sum total of such statements did not rise to the level of actionable defamation. Likewise, the District Court properly disposed of Hill's false light and IIED claims.

"'[A]lthough a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action.'" Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001) (quoting McDowell v. Paiewonsky, 769 F.2d 942, 945 (3d Cir. 1985)). Under Pennsylvania law,[4] the plaintiff must show, inter alia, "[t]he defamatory character of the communication." 42 Pa. Cons. Stat. Ann. § 8343(a)(1). If the court determines as a matter of law that the communication is not capable of having such a meaning, the claim must be dismissed. See, e.g., Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001).

364 (3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While conclusory allegations must be set aside, well-pleaded facts are to be accepted as true, and the complaint must be construed in the light most favorable to the plaintiff. See, e.g., Fowler, 578 F.3d at 210-11.

[4] The parties agree that Pennsylvania law applies, and we therefore must predict how the Pennsylvania Supreme Court would rule if faced with the issue. See, e.g., Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010). In making such a prediction, we must look, inter alia, to decisions of state intermediate appellate courts as well as rulings by federal courts interpreting Pennsylvania law. See, e.g., id. at 216-17.

8

However, this non-defamatory reading must constitute "the *only* reasonable" interpretation of the statement for the court to dismiss the defamation cause of action. Zartman v. Lehigh Cty. Humane Soc'y, 482 A.2d 266, 269 (Pa. Super. Ct. 1984) (emphasis in original). A statement is defamatory in nature "if it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Remick, 238 F.3d at 261 (quoting Tucker, 237 F.3d at 282). A statement may be considered to have a defamatory meaning if its context creates a defamatory implication, "i.e., defamation by innuendo," Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (citations omitted), but this concept of innuendo cannot be used to introduce new matter or to enlarge the natural meaning of the words used, see, e.g., Sarkees v. Warner-W. Corp., 37 A.2d 544, 546 (Pa. 1944). "'[I]t is well settled that the use of catchy phrases or hyperbole does not necessarily render statements defamatory that would otherwise be non-actionable.'" Remick, 238 F.3d at 262 (quoting Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985)). Similarly, a statement must be provable as false to give rise to a claim of defamation. See, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990).

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974) (footnote omitted); see also, e.g., U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 927 n.13 (3d Cir. 1990) (characterizing Gertz reasoning as dictum but recognizing that it is regularly cited). Statements that

9

provide the facts on which the opinion-holder bases his or her opinion, known as "pure" opinions, are not actionable. See, e.g., Milkovich, 497 U.S. at 17-23; U.S. Healthcare, 898 F.2d at 927 n.13; Redco, 758 F.2d at 972; Restatement (Second) of Torts § 566 cmt. (b). However, so-called "mixed" opinions, which imply—yet fail to disclose—the underlying facts may give rise to a defamation cause of action:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion. In such circumstances, if the underlying facts are false, the Constitution does not protect the opinion. See Restatement (Second) of Torts § 566A.

Redco, 758 F.2d at 972; see also, e.g., Remick, 238 F.3d at 261 ("In Pennsylvania, an opinion cannot be defamatory unless it 'may reasonably be understood to imply the existence of *undisclosed defamatory facts* justifying the opinion." (quoting Baker v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987))); Restatement (Second) of Torts § 566 cmt. (b).

While Hill contends that the Singer Statement implied that she was a liar (and an extortionist), Cosby insists that this response by an attorney to serious public accusations of wrongdoing made against his client in the midst of a heated public dispute could not reasonably be understood to imply the existence of any defamatory facts. We assume that a reasonable recipient could read the Singer Statement as proffering an opinion—

10

based on underlying facts—that Hill lied. Singer nevertheless disclosed the factual basis for his opinion.[5]

"[E]ven if Singer's Statement does imply Ms. Hill is a liar, it is still not actionable because it includes the facts supporting that implication." (Appellee's Brief at 18 (citing Redco, 758 F.2d at 972).) Responding to a media firestorm in which several women (including Hill) had made public accusations of serious wrongdoing against Cosby, Singer explained on his client's behalf why he believed these accusations were nothing but lies: (1) the alleged acts of abuse "occurred 30, 40, or even 50 years ago;" (2) "it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years;" and (3) "[l]awsuits are filed against people in the public eye every day," and "[t]here has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted." (A51-A52.)

_____

[5] However, no reasonable recipient could find that Singer characterized Hill and the other alleged victims as extortionists. It appears that the whole gist of the statement was to characterize the accusers' claims as unsubstantiated, fantastical, absurd, ridiculous, and uncorroborated—in other words—as "lies." The attorney thereby seemed to call into question the veracity of the abuse allegations on the grounds that the alleged victims did not report or file litigation at the time the alleged abuse occurred many years ago, even though these individuals purportedly would have had no problem in obtaining legal representation to file a lawsuit against such a wealthy defendant. Applying Florida law, the Massachusetts district court in Green determined that this Singer Statement was capable of a defamatory meaning because it could be read to imply that the allegations were false and without merit, but it did not consider whether Singer also implied that his client's accusers were extortionists. See Green, 138 F. Supp. 3d at 136-37.

11

Like the boxer's letter terminating the plaintiff's engagement as his special counsel at issue in Remick, 238 F.3d at 252-53, 261-62, or the 60 Minutes segment regarding the safety of multi-piece tire rims manufactured by the plaintiff considered in Redco, 758 F.2d at 971-73, Singer's disclosure of the facts supporting his opinion allowed the recipient to draw his or her own conclusions "on the basis of an independent evaluation of the facts," id. at 972. The Singer Statement thereby "adequately disclosed" the factual basis for the attorney's opinion.[6] Id.

---

[6] We acknowledge that Cosby unsuccessfully raised this disclosure argument in Green, but we have serious doubts with respect to the Massachusetts district court's ruling on this point (which, in any event, is not binding on this Court). Even though the Green court acknowledged that "[t]he truth of portions of the statement, such as the length of time between when the incidents allegedly occurred and the date on which any particular allegation became public, is uncontested," Green, 138 F. Supp. 3d at 136, it did not really explain why (as Hill puts it) the Singer Statement "relies on undisclosed facts" (Appellant's Brief at 11 (emphasis omitted)), see Green, 138 F. Supp. 3d at 136-37.

Hill cites, inter alia, to a Pennsylvania Superior Court ruling concluding that a letter from an attorney requesting that the Pennsylvania Attorney General conduct an investigation into the actions of a city council member regarding the retention of special counsel for the city was capable of a defamatory meaning. But she recognizes that this letter "set forth evidence that supported the defendant's belief as to why he believed the councilman violated the statutes." (Appellant's Reply Brief at 3 n.1 (discussing Green v. Mizner, 692 A.2d 169 (Pa. Super. Ct. 1997)).) In comparison, this Court has determined that significantly less detailed statements satisfied the disclosure requirement. Remick, 238 F.3d at 252-53, 261-62 (concluding that boxer disclosed factual basis for opinion that plaintiff failed to provide adequate representation by identifying five specific instances of such deficient representation); Redco, 758 F.2d at 971-72 (agreeing with district court that factual bases for all stated opinions were adequately disclosed in news story regarding multi-piece tire rims); see also, e.g., Roma v. United States, 344 F.3d 352, 361 (3d Cir. 2003) ("We are not bound by the interpretations of intermediate state appellate tribunals, however, if other sources present 'a persuasive indication that the highest state court would rule otherwise.'" (quoting U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (1996))).

We further conclude that no reasonable recipient could read Cosby's <u>Florida Today</u> Statement as implying the existence of undisclosed defamatory facts. Cosby criticized a radio station's attempt to get "people to stand up and heckle in order to collect prizes and money," questioning whether thereby encouraging "people to have a frat house mentality" could lead to violence. (SA2.) While he arguably characterized the accusations against him as "innuendos," Cosby did so in order to explain why he refused to offer any response of his own to these innuendos—and then invited the recipient to conduct his or her own investigation. As the District Court aptly explained, asking the public to investigate and draw its own conclusions "is a far cry from labelling Plaintiff (and the other women who have made similar public assertions) as liars or extortionists." <u>Hill</u>, 2016 WL 491728, at *6; <u>see also, e.g.</u>, <u>Purcell v. Ewing</u>, 560 F. Supp. 2d 337, 342 (M.D. Pa. 2008) ("The title of the posting ('Look at the pictures') and its opening sentence ('If one looks at the photos') invite readers to evaluate the photograph and form their own conclusions.").

Similarly, we agree with the District Court that the Camille Cosby Statement did not constitute actionable defamation. A defamation plaintiff bears the burden of proving the "application [of the communication] to the plaintiff" and "[t]he understanding by the recipient of it as intended to be applied to the plaintiff." 42 Pa. Cons. Stat. Ann. § 8343(a)(3), (5). "This statement targets the media as much, and arguably more so, than the accusers, by claiming that the media failed to properly source or 'vet' Plaintiff's and the other women's stories before publishing them." <u>Hill</u>, 2016 WL 491728, at *6. In fact, the Camille Cosby Statement—unlike the Singer Statement and the <u>Florida Today</u>

13

Statement—was made more than a month after Hill herself had come forward with her accusations against Cosby. Camille Cosby went on to refer to what Hill calls an infamous scandal involving false rape allegations at the University of Virginia, but we believe that no reasonable recipient could find that this final statement implied the existence of specific undisclosed facts known to Camille Cosby regarding Hill's allegations against her husband. After all, this recipient would know that Camille Cosby was not only Cosby's business manager. She was also his wife, and it is understandable that someone would defend his or her spouse against public accusations of wrongdoing without thereby implicating any specific facts regarding a particular accusation.

According to Hill, the three statements, when combined together, "demonstrate their defamatory nature based upon undisclosed, false facts." (Appellant's Brief at 19 (emphasis omitted).) We do not agree. Insofar as each statement (which was made by different people at different times) was not capable of a defamatory meaning, the sum total of these statements likewise did not rise to the level of actionable defamation.

Finally, the District Court appropriately disposed of Hill's non-defamation causes of action. "Plaintiff agrees with the court below that Pennsylvania courts apply the same analysis for both defamation and false light." (Id. at 23.) Thus, because this Court has determined that none of the statements were defamatory in nature, her false light claim fails. Hill further acknowledges that "Pennsylvania has yet to uphold such an IIED claim in a defamation context." (Id. at 29.) Even if we were inclined to agree with Hill that an IIED claim could be based on allegedly defamatory language, we refuse to allow such a

14

novel claim to go forward "after concluding as a matter of law that the language itself is not defamatory."[7]  Hill, 2016 WL 491728, at *9.

III.

For the foregoing reasons, we will affirm the District Court's order granting Cosby's motion to dismiss.

---

[7]  The District Court did not commit reversible error by dismissing Hill's complaint with prejudice.  Hill acknowledges that leave to amend should be granted "[u]nless amendment would be futile."  (Appellant's Brief at 9 (citing Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc., 170 F. App'x 805 (3d Cir. 2006)).)  There is no indication that the various deficiencies identified by this Court could be remedied in an amended complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (holding that futility is a proper justification for denying leave to amend).